UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RELIABLE AMBULANCE SERVICE OF LAREDO, INC., | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-112 |
| | § | |
| SYLVIA MATHEWS BURWELL, | § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending is a motion for summary judgment filed by Plaintiff Reliable Ambulance Service of Laredo, Inc. (Reliable) on November 14, 2014 (D.E. 22). Defendant Sylvia Matthews Burwell, Secretary of Health and Human Services, Inc., (the Secretary) filed a response and motion for summary judgment on December 15, 2014 (D.E. 25). Plaintiff alleges that it is entitled to be paid by Medicare for ambulance transportation services it provided to one of its patients. For the reasons set forth below, Plaintiff's motion is GRANTED, the Defendant's motion is DENIED, and the Secretary's decision is REVERSED.

## JURISDICTION AND VENUE

This court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. §§ 1395ff(b). Venue is proper in this court because the acts or omissions giving rise to this action occurred in the Southern District of Texas.

## BACKGROUND

Reliable is an ambulance service that provides non-emergency transfers of patients between health care facilities and patients' residences. Reliable has a contract with Medicare to provide services to eligible patients, also referred to as beneficiaries. The Center for Medicare and Medicaid Services (CMS), a division of the Department of Health and Human Services, administers the Medicare program. CMS contracts with private insurance carriers to carry out many audit and payment functions. Trailblazer was the private insurance carrier who contracted with Medicare in Texas during the relevant time period.

Reliable transported beneficiary Elodia Chapa via ambulance to and from hemodialysis treatment three times per week from November 22, 2010 until her death on January 22, 2012 (Aff. of Fernando Canseco, Att. A to Plaintiff's Mot. for Sum. Jmt., D.E. 22-2). Chapa was a 60-year-old woman who suffered from end-stage renal disease and had undergone an above-the-knee amputation on her left leg. She also was diagnosed with diabetes mellitus, dyslipidemia, peripheral neuropathy and hypertension. She had poor upper trunk control and poor motor functions. She received hyperbaric wound care and debridement to her left stump (Physician Cert. Stmt., AR 258; D.E. 15-3

at 33).  In addition she had an eschar (sometimes described as an ulcer) on her right thigh which caused pain (Run sheet from 12/9/2010, AR 546; D.E. 15-6 at 6).

Reliable sought payment from Medicare for transporting Chapa and Trailblazer approved claims for transport from November 22, 2010 through December 7, 2010.[1] Trailblazer denied one-half of the round-trip transports from December 9, 11, 14, 16 and 18, 2010,[2] and all of the round-trip transports for the remainder of December 2010.  In addition, Trailblazer denied all of the transport claims for January and February 2011.[3] Plaintiff sought review of the denials but they were affirmed at all administrative levels. The final administrative decision affirming the denials was issued by the Medicare Appeals Council (MAC) on February 5, 2014.  Plaintiff seeks review of that decision pursuant to 42 U.S.C. § 405(g).

---

[1] There is no documentation for approved claims in the Administrative Record.  However, Reliable's president stated in an affidavit that Reliable began transporting Chapa on November 22, 2010  (Canseco Aff., Att. A to Pl's Mot. for Sum Jmt., D.E. 22-2 at 3). The first claim to be denied appears to be for transportation provided on December 9, 2010.  Defendant did not contest the assertion and thus it is assumed that Reliable presented claims for payment for transportation between November 22, 2010 and December 7, 2010 and that the claims were paid.
[2] Plaintiff asserts that one-half of the round-trips were paid, but no documentation was found in the record to support that assertion.  Plaintiff submitted a document, not included in the Administrative Record, which appears to show that some claims were paid on those dates (See Ex. C to Mot. for Sum. Jmt., PL 332; D.E. 22-4 at 333). However, other documents which are part of the Administrative Record indicate the claims were not paid.  (See, e.g., AR 390; D.E. 15-4 at 85).  The MAC judge stated that Plaintiff submitted claims for one-way transportation on those dates (MAC decision, AR 4; D.E. 15-1 at 12).  Based on the evidence submitted, it is unclear whether Plaintiff submitted claims for round-trips and if so, whether one-half of each trip was paid.
[3] Plaintiff continued to transport Chapa to hemodialysis until her death on January 22, 2012, but there is no indication that claims were submitted for payment for transports occurring after February 26, 2011, or, if submitted, that such claims were paid.

## APPLICABLE LAW

**A.  Standard of Review**

Federal courts may overturn a decision of the Secretary of Health and Human Services only "if it is arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence on the record taken as a whole." *Texas Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010)(quoting *Sun Towers, Inc. v. Schweiker (Sun Towers I)*, 694 F.2d 1036, 1038 (5th Cir. 1983)).  Substantial evidence is more than a scintilla.  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 215 (5th Cir. 1996)(citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In reviewing an agency's decision under the arbitrary and capricious standard, it is presumed that the agency's decision is valid and the burden of overcoming the presumption rests with the plaintiff.  *Id.*  The standard of review is highly deferential to the administrative agency and a court should not substitute its judgment for that of the agency.  *Texas Clinical Labs*, 612 F.3d at 775 (citing *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 129 S.Ct. 1800, 1810, 173 L.Ed.2d 738 (2009)).  "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)(quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).  Purely legal questions are reviewed de novo, giving deference to the agency's

interpretation of statutes and regulations as appropriate.  *Texas Clinical Labs*, 612 F.3d at

775. (citing *Alwan v. Ashcroft*, 388 F.3d 507, 510 (5th Cir. 2004)).

## B.  Ambulance Services Provided by Medicare

Medicare is a federally funded insurance program administered by the Department

of Health and Human Services that provides basic protection against the costs of medical

care for elderly and disabled people.  42 U.S.C. § 1395c.  Regarding ambulance services:

> Medicare covers ambulance services . . . only if they are furnished to a beneficiary
> whose medical condition is such that other means of transportation are
> contraindicated.  The beneficiary's condition must require both the ambulance
> transportation itself and the level of service provided in order for the billed service
> to be considered medically necessary.  Nonemergency transportation by
> ambulance is appropriate if either: the beneficiary is bed-confined, and it is
> documented that the beneficiary's condition is such that other methods of
> transportation are contraindicated; or, if his or her medical condition, regardless of
> bed confinement, is such that transportation by ambulance is medically required.
> Thus, bed confinement is not the sole criterion in determining the medical
> necessity of ambulance transportation.  It is one factor that is considered in
> medical necessity determinations.

42 C.F.R. § 410.40(d)(1).

> Medicare covers medically necessary nonemergency, scheduled, repetitive
> ambulance services if the ambulance provider or supplier, before furnishing the
> service to the beneficiary, obtains a written order from the beneficiary's attending
> physician certifying that the medical necessity requirements of paragraph (d)(1) of
> this section are met.  The physician's order must be dated no earlier than 60 days
> before the date the service is furnished.

42 C.F.R. § 410.40(d)(2)(i).

> In all cases, the provider or supplier must keep appropriate documentation on file
> and, upon request, present it to the contractor.  The presence of the signed
> physician certification statement alone does not demonstrate that the ambulance
> transport was medically necessary.  All other program criteria must be met in
> order for payment to be made.

42 C.F.R. § 410.40(d)(2)(ii).

In Plaintiff's case, it is undisputed that Chapa was bed-confined and it also is undisputed that her physician submitted the orders that she be transported by ambulance to hemodialysis because she met the criteria under 42 C.F.R. § 410.40(d)(1).  At issue is whether other methods of transportation were contraindicated for Chapa.

Additional guidance is found in the Local Coverage Determination (LCD)[4] that addresses ambulance services.  The LCD points out that Medicare covers ambulance services only if furnished to a beneficiary whose medical condition at the time of transport is such that transportation by other means would endanger the patient's health. To be deemed medically necessary for payment, the patient must require both the transportation and the level of service provided.  Documentation, usually in the form of a "run sheet," must provide clear clinical validation of the medical need for the services and describe the services provided.

In the MAC decision, the administrative appeals judge found that other means of transportation were not contraindicated for Chapa based on run reports prepared by ambulance personnel at the time Chapa was transported (MAC decision, AR 8; D.E. 15-1 at 16).  The judge found that the run sheets indicated that no services were provided to

---

[4] Contractors create LCD's following guidelines provided by the Secretary of Health and Human Services and the LCD's represent the contractor's policy regarding whether items and services are "reasonable and necessary" under the Medicare statute.  *Erringer v. Thompson*, 371 F.3d 625, 628 (5th Cir. 2004).  Administrative judges reviewing coverage appeals are not bound by LCD's, but give substantial deference to the policies if they are applicable to a particular case.  If an administrative judge declines to follow a policy in a particular case, the ALJ or MAC decision must explain the reasons why the policy was not followed.  42 C.F.R. § 405.1062.  The LCD in effect during the relevant time period, identified as L28627, is located at http://www.aa-pa.org/sys/docs/pdf_proposals/proposal_148.pdf (last viewed April 10, 2015).

Chapa other than oxygen administered by nasal cannula on two occasions in response to elevated blood pressure.  There was no indication that Chapa complained of difficulty breathing and her oxygen saturation levels did not indicate she was in distress.  Chapa did complain of moderate pain on her right-side chest area on December 14, 2010, but the run narrative does not explain whether the complaint necessitated any services (MAC decision, AR 7; D.E. 15-1 at 15).  The judge also noted that on several transports, Chapa complained of varying levels of pain to her left stump, right thigh or buttocks.  The judge concluded that another mode of transportation, such as a stretcher van, was not contraindicated and that while Chapa needed assistance for the trips to and from dialysis, the record did not establish that such assistance had to be provided by ambulance personnel (MAC decision, AR 8; D.E. 15-1 at 16).

A review of the Administrative Record shows that all of the run sheets prepared by Reliable at the time Chapa was transported indicated that she was bed-confined because of her above-the-knee amputation, poor upper trunk control and poor motor function.  She also had a chronic infection on her left stump and had an ulcer on her right thigh for which she had undergone surgical debridement (*See*, *e.g.*, run sheets from 12/21/2010,  AR 522; 01/11/2011, AR 829; 2/15/11, AR 249; D.E. 15-5 at 117, D.E. 15-9 at 37, D.E. 15-3 at 24).  During at least twenty-seven transports she complained of either mild or moderate pain to her stump, thigh or buttocks.

At the hearing in front of the ALJ, paramedic Fernando Canseco testified that the wound on Chapa's left stump and the ulcer on her right thigh required that she be placed in a special position in order to minimize pressure on the wounds (AR 1030; D.E. 15-11

at 50).  Canseco stated that if Chapa had been transferred in a wheelchair van she would have had to be restrained because she could not sit up and restraint has to be done by a medical professional (AR 1033; D.E. 15-11 at 53).

The LCD provides a non-exhaustive list of medical conditions that warrant ambulance transport for patients with end-stage renal disease to dialysis centers. Included in the list are conditions for which ambulance transportation is commonly required and the listed conditions also can be used to judge the relative severity of conditions not listed.  One of the categories on the list is "general mobility issues and bed confinement."    Under that category, conditions commonly requiring ambulance transportation include the patient's physical condition being such that she risks injury during vehicle movement despite restraints or positioning, or the record demonstrates that specialized handling is required and provided, or both.  Any condition that contributes to general mobility issues must be adequately described.  A condition such as an unstable joint where a person must not bear any weight on the joint or a condition where a patient is incapable of protecting a weight-bearing joint indicate the need the assistance of trained medical ambulance personnel.

While Chapa did not have unstable joints, she did have an above-the-knee amputation and the run sheets show that Chapa could not sit in a wheelchair without being restrained.  Thus, she either had to have medical personnel restrain her, or be transported on a stretcher.  The MAC judge found that she could be transported by stretcher van and did not need ambulance personnel.  However, given her complaints of pain to her stump, right leg and buttocks, it is clear that she needed trained medical

personnel to provide specialized handling during the transport and the ride to avoid damage to the open wound on her stump and the ulcer on her right leg. Although the MAC judge found that nothing in the record indicated that services were needed or furnished to address the complaints, Canseco testified that services were furnished to Chapa when personnel placed her in a special position to avoid putting pressure on the stump. Accordingly, the conclusion that she did not need assistance by ambulance personnel is not supported by the substantial evidence in the record. Based on the uncontested evidence in the record, transportation by means other than ambulance was contraindicated for Chapa. Therefore, Reliable is entitled to Medicare coverage for the services it provided to her.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment (D.E. 22) is GRANTED, Defendant's motion for summary judgment (D.E. 25) is DENIED, and the decision of the Secretary of Health and Human Services is REVERSED. The parties shall confer. If the amount of Reliable's claim and the amount of attorney's fees is not in dispute, the parties shall submit an agreed order and final judgment within thirty (30) days of the date of this order. If the amount of the claim or the amount of attorney's fees is in dispute, Plaintiff shall file its motion for judgment within sixty (60) days of the date of this order with evidence supporting its claim for reimbursement, attorney's fees and any other damages to which it believes it is entitled. Defendant is ORDERED to file any

response to Plaintiff's motion on or before the twenty-first (21st) day after the motion is filed.

ORDERED this 14th day of April, 2015.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE